UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF ARKANSAS
<u>FAYETTEVILLE</u> DIVISION

5:25-BK-71311
CHAPTER 11

IN RE:        HOLLOWELL VENTURES, LLC,        DEBTOR IN POSSESSION

## MOTION TO SELL REAL ESTATE FREE AND CLEAR OF LIENS, CLAIMS, AND INTERESTS & NOTICE OF OPPORTUNITY TO OBJECT

COMES NOW THE DEBTOR, and for its Motion to Sell Real Estate ("Motion") states:

1. This court has jurisdiction of this core-proceeding matter pursuant to 28 USC §§157 and 1334, and 11 USC §§105 and 363.

2. That Debtor commenced its voluntary petition on 31st July 2025. The case has not been dismissed or converted since that time, and the Debtor remains as Debtor in Possession.

3. The Debtor has received an offer to purchase a portion of the Debtor's real estate ("Real Estate") holdings identified in Schedule A to the Debtor's petition as 205 South Second Street, Branson, Taney County, Missouri.

4. The real estate identified in paragraph 3 above is property of the bankruptcy estate.

5. The proposed buyer is Heart of Branson LLC ("Buyer"). There is no relationship between the Buyer and the Debtor other than that of Buyer and Seller.

6. The purchase price is US$2,400,000.00.

7. The Real Estate is subject to encumbrances as follows:

    a.   Real Estate Mortgage with Debtor as mortgagor and
         Arvest Bank as mortgagee.

8. The sale of the Real Estate is free and clear of all mortgages, liens, claims, and interests of any kind, but the lien of Arvest Bank shall attach to the sale proceeds to the extent of its claim on the date of closing.

9. The Buyers should be afforded the protections of 11 USC §363(m).

10. The accepted Real Estate Contract is attached hereto as Exhibit A and is incorporated by reference herein.

WHEREFORE, the Debtor prays for an order approving the sale of real estate identified in this Motion free and clear of all mortgages, liens, claims, and interests as stated herein, and for all other just and proper relief.

**HOLLOWELL VENTURES, LLC, DEBTOR IN POSSESSION**

**BOND LAW OFFICE**

BY: /S/Stanley V Bond
Stanley V. Bond          93034
PO Box 1893
525 S School Ave., Ste 100
Fayetteville, AR 72702
Office:(479) 444.0255
Fax:(479) 235.2827
Email: attybond@me.com

## NOTICE OF OPPORTUNITY TO OBJECT

Notice is hereby given that the captioned Debtor has filed the foregoing Motion to Sell Real Estate ("Motion").

Objections to the Motion must be filed in writing within twenty-eight (28) days from the date of this notice given below. If objections are received in the time allowed by this Notice, such objections will be set for hearing by subsequent notice. If no objections are received within the time allowed, the Bankruptcy Court may enter an order approving the Motion without further hearing or notice.

Objections must be in writing and filed with the Clerk, Bankruptcy Court at 35 East Mountain Street, Room 316, Fayetteville, AR 72701, with copies to the attorney for Debtors. Attorneys must file objections using the court's CM/ECF system.

**THIS NOTICE IS DATED:          31ST JULY 2025**

                                                              **BOND LAW OFFICE**

BY:     /S/Stanley V Bond
            Stanley V. Bond    93034
            PO Box 1893
            525 S School Ave., Ste 100
            Fayetteville, AR 72702
            Office:(479) 444.0255
            Fax:(479) 235.2827
            Email: attybond@me.com

## CERTIFICATE OF SERVICE

    I, the undersigned attorney for the Debtor herein, state that I have served a true and correct copy of the above and foregoing pleading by electronic delivery or by depositing a copy of the same in the U.S. Mail, postage prepaid, addressed to:

| | | |
|---|---|---|
| Arvest Bank | Arvest Bank | Jay B Williams |
| Attn: Kevin Sabin, CEO | c/o Randy Grice, Reg. Agt. | Williams Law Firm |
| 75 N East Ave. | Hilburn Law Firm | 100 W Main St. |
| Fayetteville, AR 72701 | One Riverfront Place, 8th Floor | Gentry, AR 72734 |
| | North Little Rock, AR 72114 | |

<u>Certified Mail Piece</u>:
7021 0350 0001 6622 7338

                    Heart of Branson, LLC, Buyer
                    Anthony B Gendreau, Reg. Agt.
                    108 Tannin Trace Rd
                    Branson, MO 65616-7750

                    US Trustee by electronic notice.

              All other parties receiving electronic notice.

                    20 Largest Unsecured Creditors

/s/Stanley V Bond                                   Date:   07-31-2025

State of Missouri                                                                                               Rev. 134D93D

# COMMERCIAL REAL ESTATE PURCHASE AGREEMENT

This Commercial Real Estate Purchase Agreement (this "Agreement") is entered into as of the 21 day of July, 2025 by and between Hollowell Ventures LLC , a limited liability company located at 19788 Davis ford rd, Springdale, AR 72764 ("Seller") and High Tide Realty & Investment LLC located at 200 N Bonita Ave , Panama City , FL 32401 ("Buyer"). Each Seller and Buyer may be referred to in this Agreement individually as a "Party" and collectively as the "Parties."

**1. Property**. Seller hereby agrees to sell to Buyer, and Buyer hereby agrees to purchase from Seller (the "Transaction"), all of Seller's right, title and interest in the commercial real property located at 205 207 209 S. 2nd Street, BRANSON, MO 72764, and the legal description _____ (the "Property").

**2. Personal Property.** The sale includes all of Seller's right, title and interest, if any, to all real estate, buildings, improvements, appurtenances and fixtures (except as described below). Fixtures shall include all things that are embedded in the land or attached to any buildings and cannot be removed without damage to the Property. In addition, the following items shall be included in the sale:

   - All current furnishings

**3. Purchase Price.** The purchase price for the Property is $2,800,000.00 (the "Purchase Price") payable by Buyer as follows:

   (A) Earnest Money Deposit. _____ (the "Deposit"), due upon the signing of this Agreement, the receipt of which is hereby acknowledged, to be held in escrow pursuant to this Agreement. The Deposit shall be applied to the Purchase Price at the Closing.
   (B) Closing Balance. The remainder of the Purchase Price is due upon the delivery of the general warranty deed at the Closing. This amount is subject to change based on adjustments made pursuant to this Agreement.

Unless otherwise stated in the Agreement, all payments shall be made in proceeds that are immediately available to Seller by one of the following methods:

   - Financing

**4. Disclosures.** Seller shall provide Buyer with all disclosures, and signed disclosure forms, as required by law. Seller shall also disclose to Buyer in writing any defects in the Property known to Seller that materially affects the value or quiet enjoyment of the Property. Buyer's obligations under this Agreement are contingent upon Buyer's review and approval of all required Seller disclosures and reports, including any preliminary title report.

**5. Financing Contingency.** Buyer's obligations under this Agreement are contingent upon Buyer's ability to obtain a firm commitment for a mortgage loan within thirty (30) days after the execution of this Agreement upon commercially reasonable terms. If Buyer is unable to obtain such commitment within the time specified herein, Buyer must notify Seller, and this Agreement shall be terminated and all amounts paid shall be returned to Buyer. Buyer's obligations under this Agreement are also contingent upon an appraisal on the Property equaling or exceeding the Purchase Price.

**6. Seller Representations and Warranties.** Seller represents and warrants that:

(A) Seller is the sole owner of record of the Property and has full right, power, and authority to sell, convey, and transfer the Property.
(B) Seller will convey to Buyer good and marketable title to the Property by providing to Buyer a valid general warranty deed.
(C) The Property, and the present use of the Property, are not in violation of any governmental rules, codes, permits, regulations, or limitations, and represents that nothing will be done, or allowed to be done on or about the Property between the signing of this Agreement and the date of the Closing which will result in any such violation.
(D) Seller is not a "foreign person" as defined in Section 1445(f) of the Internal Revenue Code of 1986, as amended.

**7. Inspection.** Buyer's obligations under this Agreement are contingent upon Buyer's inspection of the Property. Buyer may use any inspectors of Buyer's choice, at Buyer's expense. Seller shall cooperate in making the Property reasonably available for Buyer's inspection. If Buyer is not, in good faith, satisfied with the condition of the Property after any inspection thereof, Buyer shall deliver to Seller a written request that Seller fix or remedy any unsatisfactory conditions. If Buyer and Seller are unable to reach an agreement regarding fixing or remedying the unsatisfactory conditions, Buyer shall have the right to terminate this Agreement and be refunded any amounts previously paid under this Agreement.

**8. Due Diligence.** Buyer's obligations under this Agreement are contingent upon a due diligence period of 10 days, during which Buyer, at Buyer's expense, will conduct thorough investigations of the Property, including but not limited to environmental assessments, property condition assessments, and review of all leases and service contracts.

**9. Title Insurance.** As a condition to the Closing, Buyer shall obtain, at Buyer's expense, a title insurance policy (the "Title Policy") by a title insurance company selected by Buyer which is authorized to do business in Missouri (the "Title Company").

Promptly after the date hereof, Buyer shall order a preliminary title report from the Title Company. Within five (5) days of receiving the report, Buyer shall forward a copy of the report to Seller and shall notify Seller of any objections to title in the report or otherwise known to Buyer. Seller shall have five (5) days

after receipt of Buyer's objections to correct or address the objections. If Seller fails to correct or address the objections within the specified time period, Buyer shall have the right to terminate this Agreement and be refunded any amounts previously paid under this Agreement.

**10. Closing.** The closing of the Transaction (the "Closing") shall occur on August 22, 2025 and shall take place at Hogan Title company , _____, _____ _____, unless otherwise agreed upon by mutual consent of the Parties. Buyer has the right to make a final inspection of the Property prior to the Closing.

**11. Seller Closing Deliverables.** At the Closing, Seller shall deliver to Buyer the following:

(A) A general warranty deed conveying to Buyer title to the Property, duly executed and acknowledged by Seller.
(B) A certificate from Seller certifying that Seller's representations and warranties in this Agreement are true and correct as of the date of the Closing.
(C) Such affidavits or other evidence as the Title Company shall reasonably require for its title insurance policy.
(D) All keys to doors and mailboxes, codes to any locks and owner's manuals for appliances and fixtures.
(E) Any other documents, certificates, notices, affidavits or statements required by this Agreement, the Title Company, the escrow agent (if any) or law to complete the Transaction.
(F) A certificate from Seller certifying that Seller is not a foreign person.

**12. Buyer Closing Deliverables.** At the Closing, Buyer shall deliver to Seller the following:

(A) The full amount of the balance of the Purchase Price, as adjusted by any pro rations or credits.
(B) Such affidavits or other evidence as the Title Company shall reasonably require for its title insurance policy.
(C) Any other documents, certificates, notices or statements required by this Agreement, the Title Company, the escrow agent (if any) or law to complete the Transaction.

**13. Seller Closing Costs.** On or before the Closing, Seller shall pay:

(A) One half of any escrow or closing fees.

**14. Buyer Closing Costs.** On or before the Closing, Buyer shall pay:

(A) One half of any escrow or closing fees.
(B) All transfer taxes and conveyance fees.

**15. Risk of Loss**. Seller assumes the risk of loss or damage by fire, natural disaster or other casualty to the Property until the Closing. In the event that all or a portion of the Property is destroyed or otherwise materially damaged prior to the Closing, Buyer shall have the option (a) to complete the Transaction and receive any insurance proceeds payable or (b) to terminate this Agreement and be refunded any amounts previously paid under this Agreement.

**16. Possession of the Property**. Seller shall deliver exclusive possession of the Property on August 22, 2025.

**17. Buyer's Lien**. All sums paid on account of this Agreement and the reasonable expenses related to the examination of title are hereby made a lien upon the Property, but such lien shall not continue after default by Buyer hereunder.

**18. Condition of Property.** Buyer acknowledges that Buyer is purchasing the Property "AS IS" in the condition that it is in at Buyer's final inspection. Seller agrees that the Property shall be in the same condition on the date of the Closing as of the date that Buyer's final inspection is completed.

**19. Sex Offender Registry Notice.** Pursuant to law, information about specified registered sex offenders is made available to the public. Buyer understands and agrees that they are solely responsible for obtaining any and all information contained in the state or national sex offender registry for the area surrounding the Property, which can be obtained online or from the local sheriff's department or other appropriate law enforcement officials. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and zip code in which he or she resides.

**20. Real Estate Taxes**. All real property taxes and adjustments which are delinquent shall be paid at the Closing out of funds due to Seller. Any non-delinquent real property taxes and adjustments, if any, shall be apportioned pro rata on an accrual basis.

**21. Default**. In the event Buyer defaults, Buyer shall forfeit the Deposit to Seller as liquidated damages, which shall be the sole and exclusive remedy available to Seller. In the event Seller defaults, the Deposit shall be refunded to Buyer, and Buyer may sue for all remedies available at law or in equity.

**22. Acceptance of Deed**. The delivery and acceptance of the deed herein described shall be deemed to constitute full compliance with all the terms, conditions, covenants and representations contained herein, or made in connection with the Transaction, except as may herein be expressly provided and except for the warranties of title.

**23. Brokerage Fees.** Brokerage fees associated with this sale transaction are the responsibility of . These fees must be settled in full by the responsible party at Closing.

**24. Bankruptcy.** In the event a bankruptcy petition is filed naming Seller as a debtor under any Bankruptcy Code, between the signing of this Agreement and the Closing, then this Agreement shall be terminated and Buyer shall be entitled to a refund of any and all sums paid under this Agreement.

**25. Attorney's Fees.** Except as otherwise expressly provided in this Agreement, in the event of any litigation brought in law or equity to enforce any material provision of this Agreement, the prevailing Party shall be entitled to recover its reasonable attorneys' fees and court costs from the other Party.

**26. Governing Law.** The terms of this Agreement shall be governed by and construed in accordance with the laws of the State of Missouri, not including its conflicts of law provisions.

**27. Disputes.** Any dispute arising from this Agreement shall be resolved through mediation. If the dispute cannot be resolved through mediation, then the dispute will be resolved through binding arbitration conducted in accordance with the rules of the American Arbitration Association.

**28. Compliance with Laws.** Both parties hereby affirm that this transaction complies with all applicable federal, state, and local laws, including but not limited to those governing commercial real estate transactions.

**29. Notices.** Any notice or other communication given or made to any Party under this Agreement shall be in writing and delivered by hand, sent by overnight courier service, or sent by certified or registered mail, return receipt requested, to the address stated above or to another address as that Party may subsequently designate by notice and shall be deemed given on the date of delivery.

**30. Assignment.** This Agreement and Buyer's rights under this Agreement may not be assigned by Buyer without the express written consent of Seller.

**31. Amendment.** This Agreement may be amended or modified only by a written agreement signed by all of the Parties.

**32. Waiver.** No Party shall be deemed to have waived any provision of this Agreement, or the exercise of any rights held under this Agreement, unless such waiver is made expressly and in writing. Waiver by any Party of a breach or violation of any provision of this Agreement shall not constitute a waiver of any other subsequent breach or violation.

**33. Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the Parties and their respective legal representatives, heirs, executors, administrators, successors, and permitted assigns.

**34. Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, and all of which together shall constitute one and the same document.

**35. Severability.** If any provision of this Agreement is held to be invalid, illegal or unenforceable in whole or in part, the remaining provisions shall not be affected and shall continue to be valid, legal and enforceable as though the invalid, illegal or unenforceable parts had not been included in this Agreement.

**36. Headings.** The section headings herein are for reference purposes only and shall not otherwise affect the meaning, construction or interpretation of any provision in this Agreement.

**37. Entire Agreement.** This Agreement contains the entire understanding between the Parties and supersedes and cancels all prior agreements of the Parties, whether oral or written, with respect to the subject matter.

IN WITNESS WHEREOF, the Parties hereto, individually or by their duly authorized representatives, have executed this Agreement as of the first date written above.

| Hollowell Ventures LLC | *Tim Hollowell* | Tim Hollowell Manager |
|---|---|---|
| **Seller** Full Name | **Seller Representative** Signature | **Seller Representative** Name and Title |

| High Tide Realty & Investment LLC | *Jennifer LeChance* | Jennifer LeChance Owner |
|---|---|---|
| **Buyer** Full Name | **Buyer Representative** Signature | **Buyer Representative** Name and Title |

**Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards**

**Lead Warning Statement**

*Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, lessors must disclose the presence of known lead-based paint and/or lead-based paint hazards in the dwelling. Lessees must also receive a federally approved pamphlet on lead poisoning prevention.*

**Seller's Disclosure**

(a) Presence of lead-based paint and/or lead-based paint hazards (check (i) or (ii) below):

    (i)    \_\_\_\_ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).

    (ii)   __X__ Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(b) Records and reports available to the lessor (check (i) or (ii) below):

    (i)    \_\_\_\_ Seller has provided the lessee with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below). _____

    (ii)   __X__ Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Buyer's Acknowledgment** (initial)

(c) _____ Buyer has received copies of all information listed above.
(d) _____ Buyer has received the pamphlet Protect Your Family from Lead in Your Home.

**Agent's Acknowledgment** (initial)

(e) _____ Agent has informed Seller of Seller's obligations under 42 U.S.C. §4852d and is aware of his/her responsibility to ensure compliance.

**Certification of Accuracy**

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

*Tim Hollowell*     07/22/2025
Signature of **Seller**     Date Signed

*Jennifer LeChance*     07/22/2025
Signature of **Buyer**     Date Signed

_____     _____
Signature of **Agent**     Date Signed

Audit Trail

| Date | Time | Event |
|---|---|---|
| 07/22/2025 | 12:41:20 PM | Document signed and executed by all parties |
| 07/22/2025 | 12:41:20 PM | Document signed by Jennifer LeChance (jenworkswonders@gmail.com) |
| 07/22/2025 | 12:40:59 PM | Document viewed by Jennifer LeChance (jenworkswonders@gmail.com) |
| 07/22/2025 | 12:25:54 PM | Sent out for signature to Jennifer LeChance (jenworkswonders@gmail.com) |
| 07/22/2025 | 12:25:54 PM | Document signed by Tim Hollowell (topgundrivers@gmail.com) |
| 07/22/2025 | 12:24:59 PM | Document viewed by Tim Hollowell (topgundrivers@gmail.com) |
| 07/22/2025 | 12:24:41 PM | Sent out for signature to Tim Hollowell (topgundrivers@gmail.com) |
| 07/22/2025 | 12:24:41 PM | Sent out for signature to Jennifer LeChance (jenworkswonders@gmail.com) |
| 07/22/2025 | 12:15:38 PM | E-Sign was created by Tim Hollowell (topgundrivers@gmail.com) |